*Pro Se 7 2023*

FILED
LODGED
RECEIVED    MAIL

MAR 09 2026

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

BY _____    DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

Maria Alonso

_____

_____

Plaintiff(s),

v.

Verity Credit Union

_____

_____

Defendant(s).

CASE NO. 2:26-cv-00840-JCC
[to be filled in by Clerk's Office]

COMPLAINT FOR EMPLOYMENT
DISCRIMINATION

Jury Trial: ☒ Yes   ☐ No

## I.    THE PARTIES TO THIS COMPLAINT

A.    Plaintiff(s)

*Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.*

| | |
|---|---|
| Name | Maria Alonso |
| Street Address | 197 Van Vorst st apt 1010 |
| City and County | Jersey City Hudson County |
| State and Zip Code | NJ 07302 |
| Telephone Number | 6462171631 |

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 1

*Pro Se 7 2023*

B.    Defendant(s)

*Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.*

Defendant No. 1

| | |
|---|---|
| Name | Verity Credit Union |
| Job or Title *(if known)* | |
| Street Address | 11027 Meridian Avenue North |
| City and County | Seattle, King County |
| State and Zip Code | Washington, 98133 |
| Telephone Number | (206) 361-5344 |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 2

*Pro Se 7 2023*

Defendant No. 4

> Name
>
> Job or Title *(if known)*
>
> Street Address
>
> City and County
>
> State and Zip Code
>
> Telephone Number

C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is:

> Name
>
> Street Address
>
> City and County
>
> State and Zip Code
>
> Telephone Number

## II.    BASIS FOR JURISDICTION

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 3

*Pro Se 7 2023*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.
*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Other federal law *(specify the federal law)*:

_____

☒ Relevant state law *(specify, if known)*:

Washington Law Against Discrimination (RCW 49.60)

_____

☐ Relevant city or county law *(specify, if known)*:

_____

### III.    STATEMENT OF CLAIM

*Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.*

**A. Summary Allegations Filed with EEOC**

A charge of discrimination was filed with the EEOC. Complaint No.: Title VII/ Retaliation, Complaint #551-2024-03148.

Plaintiff also submitted a *"Response to Verity Credit Union's Position Statement and Request for the Investigation to Continue* on October 24, 2024. I have attached a copy of that document, which includes a "Restatement of Complaint."

I respectfully incorporate these documents by reference and intend to include every fact and allegation asserted therein as if fully set forth herein.

In sum and substance, my filings with EEOC allege:

I endured a hostile work environment because of: (1) the color of my skin, (2) perceived racial norms of Whiteness, and (3) racial ambiguity.

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 4

*Pro Se 7 2023*

Because I was perceived as being "white passing," I was threatened with statements, by my supervisor, that I might need to leave this job, I could lose my job, or not be well liked among my peers.

I am a Latina. My supervisor was deeply upset by my "passing" Whiteness and referred to me in a hostile manner. My supervisor said she was triggered by White women reporting to her. And, she even went so far as to refer to me as being a "White Supremacist," without such a statement having any basis in fact.

Recognizing there were wide-spread problems in the organization, the CEO's office and Human Resources provided coaches to most (if not all) supervisors. After disclosing to my HR-appointed coach that I was having to endure such a hostile work environment and was being illegally discriminated against, my supervisor's verbal abuse continued.

In addition, my supervisor retaliated against me by immediately searching for my replacement, who was identified and retained before I was fired.

Ultimately, my employer found an unjustifiable, pretextual reason to fire me. I believe I was fired because of the color of my skin and because I failed to meet expected racial norms set by my supervisor.

## B. General Allegations

1. Plaintiff was hired in or about February 2023 as Vice President of Marketing. Plaintiff is Hispanic and of Mexican national origin. Plaintiff performed her duties satisfactorily.

2. During recruitment, Plaintiff was informed that Defendant sought to hire a BIPOC individual and that this requirement was nonnegotiable.

3. After beginning employment in April 2023, Chief Impact Officer Ziquora Banks made repeated race-based comments, including statements that she was triggered by White women and recommendations that White employees be removed from the marketing team.

4. Plaintiff was criticized in race related terms, including being told she was "White passing" and that moving too fast was a sign of White supremacy.

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 5

*Pro Se 7 2023*

5. Defendant engaged in race-based employment practices, including discouraging the hiring of qualified White candidates and refusing to engage vendors because of the race of ownership.

6. Plaintiff objected to race based decision making and opposed discriminatory practices within the organization. Plaintiff requested a copy of the employee handbook to understand applicable policies but was informed none existed.

7. Plaintiff witnessed retaliation against other employees who complained about a hostile work environment.

8. After Plaintiff opposed discriminatory conduct and raised concerns, Defendant's treatment of Plaintiff worsened.

9. On February 8, 2024, Plaintiff was terminated and told she violated a handbook policy that she had never been provided or asked to sign.

10. The stated reason for termination was pretextual.

C. Count I – Discrimination Based on Race, Color, and National Origin (Title VII and RCW 49.60)

11. Plaintiff is a member of protected classes based on race, color, and national origin.

12. Defendant subjected Plaintiff to disparate treatment and adverse employment actions because of her race, color, and national origin.

13. Defendant terminated Plaintiff under circumstances giving rise to an inference of unlawful discrimination.

14. Defendant's conduct violated Title VII of the Civil Rights Act of 1964 and the Washington Law Against Discrimination.

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 6

D. Count II – Hostile Work Environment

15. Defendant, through its executive leadership, made repeated race based comments and engaged in race based employment practices.

16. The conduct was unwelcome, race based, and sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment.

17. Defendant is liable because the conduct was committed by senior leadership acting within the scope of employment.

E. Count III – Retaliation

18. Plaintiff engaged in protected activity by opposing race based discrimination and objecting to discriminatory employment practices.

19. Plaintiff's opposition to discrimination was known to Defendant's leadership.

20. Shortly after engaging in protected activity, Plaintiff was terminated.

21. Defendant's stated reason for termination was false and pretextual.

22. Plaintiff's protected activity was a substantial and motivating factor in Defendant's decision to terminate her.

23. Defendant's actions constitute unlawful retaliation under Title VII and Washington law.

F. Damages

24. As a direct and proximate result of Defendant's unlawful discrimination, hostile work environment, and retaliation, Plaintiff has suffered loss of income, loss of retirement contributions, relocation expenses, emotional distress, reputational harm, and continuing economic damages.

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 7

*Pro Se 7 2023*

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

       ☐    Failure to hire me.

       ☒    Termination of my employment.

       ☐    Failure to promote me.

       ☐    Failure to accommodate my disability.

       ☒    Unequal terms and conditions of my employment.

       ☒    Retaliation.

            Other acts *(specify)*:
            Race based comments, race-based hiring and vendor decisions, and creation of a hostile work environment based on race and national origin.

       ☒

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

April 2023 through February 8, 2024.

C.    I believe that defendant(s) *(check one)*:

       ☐    is/are still committing these acts against me.

       ☒    is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

       ☒    race          Hispanic

       ☒    color

       ☐    gender/sex

       ☐    religion

       ☒    national origin    Mexican

       ☐    age *(year of birth)*        *(only when asserting a claim of age discrimination.)*

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 8

*Pro Se 7 2023*

☐    disability or perceived disability *(specify disability)*

E.    The facts of my case are as follows.  Attach additional pages if needed.

Plaintiff was hired in February 2023 as Vice President of Marketing. Plaintiff is Hispanic and of Mexican national origin. During recruitment, Plaintiff was informed that Defendant sought to hire a BIPOC individual and that this requirement was non-negotiable.

After beginning employment in April 2023, Plaintiff was subjected to repeated race-based comments by senior leadership. Plaintiff was told she was "white passing," that moving too fast was a sign of white supremacy, and that white employees and vendors should be removed because they were triggering. Plaintiff objected to race based employment decisions and opposed discriminatory hiring and vendor practices.

Plaintiff requested copies of relevant policies, including the employee handbook, but was told none existed.

On February 8, 2024, Plaintiff was terminated and told she violated a policy that had never been provided to her. The stated reason was pretextual. Plaintiff was terminated in retaliation for opposing discriminatory practices and because of her race, color, and national origin.

As a result, Plaintiff has suffered significant economic loss, emotional distress, and continuing damages.

    *(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 9

*Pro Se 7 2023*

## IV.    EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct on:

July 3, 2024.

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☒    issued a Notice of Right to Sue letter, which I received on *(date)*
        December, 11, 2025

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.
☐    less than 60 days have elapsed.

## V.    RELIEF

*State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages. Attach additional pages if needed.*

Plaintiff seeks:

COMPLAINT FOR EMPLOYMENT DISCRIMINATION -
10

*Pro Se 7 2023*

Back pay in the approximate amount of $229,500 representing thirteen months of unemployment following termination and four additional months of unemployment following a subsequent layoff.

Lost employer 401k contributions in the approximate amount of $6,885 based on a three percent employer match.

Relocation expenses in the approximate amount of $20,000 incurred in mitigation of damages.

Total economic damages to date are approximately $256,385, exclusive of continuing losses.

Plaintiff continues to incur ongoing wage loss of approximately $13,500 per month.

Plaintiff further seeks:

• Front pay

• Lost health insurance benefits

• Compensatory damages for emotional distress

• Punitive damages

• Attorneys' fees

• Filing fees and litigation costs

• Pre and post judgment interest

• Any further relief the Court deems just and proper

## VI.    CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper

COMPLAINT FOR EMPLOYMENT DISCRIMINATION -
11

*Pro Se 7 2023*

purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     march 6 2026

Signature of Plaintiff

Printed Name of Plaintiff     maria alons o

Date of signing:     maron 6 2026

Signature of Plaintiff

Printed Name of Plaintiff     monia alons o

Date of signing:     morcrl 6 2026

Signature of Plaintiff

Printed Name of Plaintiff     maria alons o

COMPLAINT FOR EMPLOYMENT DISCRIMINATION -
12

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Seattle Field Office**
909 First Avenue, Suite 400
Seattle, WA 98104
(206) 576-3000
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)
### (This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 12/11/2025

**To:** Maria Alonso
197 Van Vorst St Apt 1010
Jersey City, NJ 07302
Charge No: 551-2024-03148

EEOC Representative and email:    Bryne Moore
Investigator
bryne.moore@eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 551-2024-03148.

On Behalf of the Commission:

December 11, 2025                               for
Date                          Elizabeth M. Cannon, Director
                              Seattle Field Office

**cc:**
Verity Credit Union

Please retain this Notice for your records.

Enclosure with EEOC Notice of Closure and Rights (05/25)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC
*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

**IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT**

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal. You should keep a record of the date you received EEOC's official notice of dismissal.** Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

**ATTORNEY REPRESENTATION**

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

**HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS**

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

Enclosure with EEOC Notice of Closure and Rights (05/25)

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 551-2024-03148 to the District Director at Christopher Green, 450 Golden Gate Avenue 5 West PO Box 36025, San Francisco, CA 94102.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 551-2024-03148 to the District Director at Christopher Green, 450 Golden Gate Avenue 5 West PO Box 36025, San Francisco, CA 94102.

You may request the charge file up to 90 days after receiving EEOC's **official notice of dismissal**. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | | EEOC  FEPA | 551-2024-03148 |

| Washington State Human Rights Commission | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| I Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)* | Home Phone | Year of Birth |
|---|---|---|
| Maria Alonso | 646-217-1631 | 1982 |

**Street Address**

2201 sw genesee st

SEATTLE, WA 98106

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| VERITY CREDIT UNION | 101 - 200 Employees | |

**Street Address**

11027 MERIDIAN AVE N

Seattle, WA 98133

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |
| Color, National Origin, Race, Retaliation | 04/01/2023 | 02/08/2024 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

On or about February of 2023, I was hired by Verity Credit Union, hereinafter Respondent, as a VP of Marketing. I performed my duties in a satisfactory manner.

During my recruitment, I was informed that Respondent sought to hire a BIPOC, Black Indigenous Person of Color, person and that this was non-negotiable. As a Hispanic who speaks with a Hispanic accent, I was hired. When I began working in April of 2023, Chief Impact Officer Ziquora Banks told Chief Executive Officer Tonita Webb and I that she was triggered by all the White women who reported to her due to past negative experiences, and she recommended to me and Webb that we get rid of the marketing team because of her negative experience with White women. During this time, two marketing members filed complaints to HR about a hostile work environment because they didn't feel comfortable with Banks and I saw her retaliate against them. One was pushed out and another was offered a severance. I asked Webb and HR for a copy of the employee handbook to read and sign, and know Respondent's code of conduct, but was told there was none. On or about July of 2023, Banks critiqued a presentation of mine because there was too many White people, and in a meeting she told me I was moving too fast and moving too fast was a sign of White supremacy. In disbelief, I asked her if she called me a White supremacist and she said she had to go to another meeting and hung up. On

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.  **Digitally Signed By: Maria Alonso**  **07/03/2024** | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

Page 1 of 3

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br><br>FEPA | 551-2024-03148 |

| Washington State Human Rights Commission | and EEOC |
|---|---|
| *State or local Agency, if any* | |

or about September of 2023, I was told by Banks that I was White Passing, as in looked/appeared White because of my light skin tone, and I don't know the struggles of BIPOC people because of my skin color. In my voice-recorded meetings with my work counselor/coach Malaika, I disclosed the harassing comments that Banks made to me and in my presence, and he agreed with Banks. stating that Black people are the ones who had suffered the most and I had to understand where the Black community was coming from. I am aware that the coach told Banks about my complaints because she asked me if she could tell Banks and I said yes because I thought it would make the situation better, but it only got worse. For instance, on or about October of 2023, I was hiring for roles in my team, I was afraid of hiring this White male who spoke Spanish because of the racial bias I had by now witnessed from Banks, but I recommended him to proceed with the interview with Banks based on his qualifications. Banks said that having a White male would be going backwards and it would be triggering, and Webb agreed. On or about December of 2023, we got a multicultural agency to do some marketing and Banks told me that we could not hire the agency because of the White male who was an owner. On or about February 8, 2024, I was discharged after being told that I failed to disclose a relationship with an associate board member I recommended for hire, and that this was against the rules according to the employee handbook. However, I was discharged in retaliation for my complaints because I never received a copy of the employee handbook to read and sign, despite asking for it.

I believe I have been discriminated against based on my race (Hispanic), national origin (Mexican), and color, including retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Maria Alonso**<br><br>**07/03/2024**<br><br><br><br>                                        *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED   AND   SWORN   TO   BEFORE   ME   THIS   DATE<br>(*month, day, year*) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

October 10, 2024

**VIA ELECTRONIC MAIL**

EEOC Investigator
U.S. Equal Employment Opportunity Commission
Seattle Field Office
909 First Avenue, Suite 400
Seattle, WA 98104

Re: Complaint No.: Title VII/ Retaliation, Complaint #551-2024-03148

**Complainant's Response To Verity Credit Union's Position Statement and
Request for Investigation to Continue or to Issue Right to Sue Letter**

Complainant: Maria Alonso
Respondent: Verity Credit Union

Dear EEOC:

I respectfully submit the following information in response to Verity Credit Union's Position Statement, dated September 10, 2024.

Verity opens its position statement with an assertion that it is an employer "dedicated to providing its employees a work environment free from discrimination." This is a platitude and was not my experience while employed at Verity Credit Union.

## I.    RESTATMENT OF COMPLAINT

I restate the core of my complaint here:

## HOSTILE WORK ENVIRONMENT

I endured a hostile work environment because of: (1) the color of my skin, (2) perceived racial norms of Whiteness, and (3) racial ambiguity (*i.e.,* being perceived as a race/ethnicity other than Latina). Because I was perceived as being "white passing," I was threatened with statements, by my supervisor, that I might need to leave this job, I could lose my job, or not be well liked among my peers. My supervisor stated she was triggered by "White" women reporting to her. I was also the target of severe name calling, including workplace taunting that I was a "White Supremacist."

**RETALIATION**

After disclosing that I was enduring a hostile work environment and illegally discriminated against, my supervisor's verbal abuse continued. In addition, my supervisor immediately began searching for my replacement, who was identified and retained before I was fired.

**DISCRIMINATION**

Ultimately, my employer found an unjustifiable, pretextual reason to fire me. I believe an EEOC investigation will prove that I was fired because of the color of my skin and because I failed to meet expected racial norms set by my supervisor.

## II.   REQUEST FOR AGENCY INVESTIGATION TO CONTINUE OR TO IMMEDIATELY ISSUE A "RIGHT TO SUE" LETTER

Below, I offer rebuttal information about several misleading and patently false statements made by the Respondents in their position statement.  However, before offing rebuttal information about what the Respondents said, it is important to note what they did not say.

Respondents did not deny I was perceived by my colleagues as being "white passing."  They did not deny that my supervisor stated to the CEO and me that she was triggered by all the White who reported to her.  Respondents did not deny that my supervisor recommended terminating the marketing team because of her negative experience with White women.  They did not deny that I was also the target of severe name calling, including workplace taunting that I was a "White Supremacist."

The evidence provided in this letter is enough to establish a to support a claim and proceed to trial. Through further investigation and with the power of the discovery process, I am confident my chances of prevailing in court of law are high.

Therefore, the Respondent's request that the agency dismiss the Complaint with a no-cause finding should be denied.

In addition, the Respondents acknowledge there are audio recordings, documents, and other employees who could be interviewed to garner their testimony and further establish the facts of this case, which remain very much in dispute.

I pray the Agency directs the Respondent to either preserve and/ or to turn over those documents to assist the Agency in an on-going investigation.

If the Agency has reached the end of its investigation, I respectfully request a "Right to Sue" letter so that I may file my case in court and use the power of the discovery process to compel the release of information I believe Verity is withholding.

### III.    REBUTTING MISINFORMATION AND DISHONEST INFORMATION PROVIDED BY VERITY

Verity's response and their so-called "Statement of Facts" are misleading at best. In some cases, the respondent has clearly lied.

**Accusation of Filing False Complaints**

A clear example of misinformation provided by Respondent is that I "filed a number of false complaints with various state departments in an effort to 'get back' at the company." Nothing could be further from the truth. In reality, I am fighting for my legal rights, which Verity has systematically tried to take away through their discriminatory and retaliatory actions.

For example, I filed for Unemployment Benefits, which my former employer contested, saying I was terminated for misconduct. The Employment Security Department of the State of Washington found otherwise, stating:

> **"Our decision: We approved your unemployment benefits starting Feb 4, 2024. You or your employer, VERITY CREDIT UNION, said you were fired. We looked at the information and found your actions were not misconduct. When we find no misconduct, you are eligible for benefits."** (Exhibit A)

I won my unemployment claim. Period. This was not a false complaint. It was not done to "get back" at the company.  It is preposterous for the Respondent to say so.

Another separate and distinct issue that I am facing is that Verity did not uphold its written promises made in my offer letter — a binding contract — related to when I vest in the 401(k) with an employer match.

This breach of contract has led me to file a small claims case, which is scheduled for October 25th, 2024. (Exhibit B) I fully expect to win that case as well.

Here, too, this is not a false complaint. It was not done to "get back" at the company.

It is an act of bad faith for the Respondent to represent these two cases as "a number of false complaints with various state departments in effort to 'get back' at the company." There were only two such complaints, both of which are clearly legitimate — and, in one case Verity already lost the case.  The way the Respondent characterized this information seriously calls in to question the credibility of their entire position statement.

These issues also show, at best, Verity has evident generalized internal disfunction. At worst, their HR apparatus is a disastrous dumpster fire due to extreme incompetence or negligence. This incompetence has allowed the toxic, hostile, discriminatory environment I experienced to continue unabated.

**The Alleged Policy Violation and Changing Narratives About Why I Was Fired**

Changing narratives about why I was fired makes it difficult to respond.  It also suggests that an employer's reason may be pretextual (because it has changed over time), which warrants this case moving forward.

Below, I offer rebuttals for two different narratives that have been espoused in this case.

### IF RESPONDENT'S POSITION STATEMENT MEANS TO SAY THEY WERE NOT INITIALLY GOING TO FIRE ME / FIRED FOR DELINING MEETING

Verity's claim that the reason for my termination was due to a violation of the company's Personal Relationship Policy by failing to disclose my relationship with an Associate Board Member, Fernando Turrent, is full of holes and contradictions:

Verity claims that they investigated and were trying to chat with me about it, but since I declined a meeting at 5 PM with no agenda, on a day where I had a previous commitment, which I informed to Ziquora Banks on the meeting decline, I was let go.

Ziquora Banks wanted to fire me due to me being a "white passing" Mexican, that didn't fit her mold of "Diversity" and never planned to talk about any investigation. Proof of this is the time of the meeting, which was closely coordinated internally to fire me at the same time as Mr. Turrent was informed of the situation. Both meetings were set for 5 PM, the time Mr. Turrent finished his office schedule. As I was, and continue to be, unaware of Mr. Turrent's scheduled, I carried on with my routine since the meeting had no agenda and had no urgency to it.

This points to close coordination in two processes that either should have been addressed jointly (talk to both about the situation) or managed completely independent, neither of which happened. If the meeting was as Verity claims to inform me about the situation with the intent to work out a solution, why would they not schedule a meeting during business hours that day or the next? If there was no plan to terminate me as Verity states, the timing would have made no impact, particularly since as its clearly stated in their statement "Associate Board Member positions are voluntarily" with no voting or supervisory role whatsoever.

Finally, if this was the cause for termination, Verity could have provided this information, as well as all the alleged data and proof they claim to have, including the so-called investigation, to the Employment Security Department of the State of Washington, which it seems they did not.

### IF RESPONDENT'S POSITION STATEMENT MEANS TO SAY THEY WERE GOING TO FIRE ME ALL ALONG

Verity claims they carried out an investigation and were going to inform me of my termination due to a conflict of interest, but in reality, this was an excuse for Ziquora Banks to get rid of me for being a "white passing" Mexican, that didn't fit her mold of "diversity". There was no

investigation or process followed for this supposed violation since:

1) Ziquora Banks never planned to share the investigation or the outcomes, she just wanted to fire me. On the day of the termination, after my engagement was over, I saw a text from Ziquora Banks informing me to get on the phone since this "would only take a couple of minutes".

2) Contrary to Verity's claim, I never received the employee handbook, or for that manner any other material that reference the issue, even though I repeatedly requested it. In Verity's Exhibit 3 they share an email they sent back to me on February 15, 2024, but as usual fail to disclose the entire story to distort and mislead.

   The day after receiving the termination email, I replied to Ms. Pier'jea Lyons specifically asking for (Exhibit C):
   1. List of training of intimate relationships in the workplace, as well as date and time these have been offered
   2. Policy related to hostile work environments
   3. The specific policy I allegedly violated (place, verse, and line)
   4. Policy information on how conflict of interest is managed in the workplace

   This information should have been readily available since it would have been required during an actual investigation, instead I got the generic email stating I was terminated, without any investigation, process, or due diligence.

3) My termination as a response to the matter is a gross overreach of their policy, since, as they admit and say in their statement, "Associate Board Member positions are voluntarily" with no voting or supervisory role whatsoever. As part of Verity's now established pattern of surfacing partial information to distort and mislead, the excerpts from the Employee Handbook in Exhibit 1 leave out the part on how to handle any policy violation and the process established for it, which I'm assuming states *"Failure to disclose a conflict of interest, or any action that intentionally withholds relevant information, may result in disciplinary action, up to and including a request for one party to step down from their current position. In severe cases, such as those involving a significant or unresolvable conflict, termination of employment may be pursued to protect the integrity and operations of the organization."* or some verbiage in that manner. This information would prove that not only did they not conduct the investigation, but grossly overreached their own handbook guidelines since there was at no point in time a conflict of interest since I did not influence, supervise, or direct Mr. Turrent's work or vice-versa.

4) Verity's actions and statements lead to the most glaring contradiction; if the alleged Policy violation was the cause for termination, Verity could have provided this information, as well as all the alleged data and proof they claim to have including the so-called investigation, to the Employment Security Department of the State of Washington, which it seems they did not.

This suggests that Verity's claims and statements are an attempt to retroactively cover up the

fact that I was terminated due to the constant discrimination and harassment I received from Ziquora Banks for the simple fact that she didn't not like me since I was a "white passing" Mexican that did not fit her mold of what diversity should be.

**Respondent's Failure to Provide Handbook and Policy Access**

Contrary to the claims in Verity's response, I never received a copy of the employee handbook, despite multiple requests. Without access to this handbook, I was unaware of the specific policies that I allegedly violated. To claim that I could have accessed the handbook via Verity's intranet after asking for it multiple times is false, I was never informed of how or where to locate these materials.

Even Tonita Web, the CEO, publicly acknowledged several times in front of the CTO (Chief Information Technology) that the intranet and computer equipment was subpar at best. If the handbook is central to compliance with company policies, it should have been readily accessible and directly provided, especially given my role and responsibilities. After I was terminated, I asked a previous colleague, Raquel Lopez and she shared the handbook and at the end of it had a place for employee signature as well as date. Verity clearly failed to share that information.

To this day, Verity has never shared the full handbook with me, instead it has followed the established pattern of proving cherry picked information only after authorities are involved.

Another clear example of this behavior is my email on March 8th, to Holly Wu regarding the request for information about the 401K plan which I was a part of. Verity provided the information only after the US Labor Department was informed and had made a formal request for the documentation Exhibit D. This points to the pervasive lack of processes and stonewalling which Verity consistently uses to retaliate and cover up the discriminatory practices of leaders like Ziquora Banks.

**Discriminatory Behavior and Retaliation**

As previously mentioned, I experienced ongoing discrimination due to the color of my skin and race during my time at Verity, specifically from Ziquora Banks, the Chief Impact Officer. A notable instance occurred when Ms. Banks critiqued my work stating that I was "moving too fast" and that this behavior was reflective of "white supremacy." I directly asked her if she was calling me a white supremacist, to which she abruptly ended the conversation. This was part of a broader pattern of discriminatory remarks and harassment, including Ms. Banks labeling me "white-passing" and claiming that I did not understand the struggles of BIPOC individuals due to my skin color.

I disclosed these comments to my work counselor/coach, Malaika Aaron-Bishop, during a **video-recorded** meeting, where these concerns were documented. However, Verity's statement and so called "review" of the recording omits these critical points, which further highlights the lack of transparency and acknowledgment of the discriminatory environment I faced.

The relationship between the coaches and Verity presents a clear conflict of interest for the coaching agency. For instance, my coach, Malaika Aaron-Bishop, was also Ziquora Banks' coach, which granted her access to everything I shared during our sessions. This conflict had already started surfacing with Ms. Aaron-Bishop repeatedly hinting that I wasn't liked or wanted at Verity and making comments such as "Verity might not be the right place for you", as well as stating that "Black people had it worse than any other race in the U.S." This clear bias and conflict of interest made me uncomfortable to the point of both of us agreeing for me to have a different coach. As a result, in the month of January, I started chatting with a different coach.

The fact that the coaching agency was hired by Verity's leadership and has a financial arraignment with them makes it impossible for the coaching agency to provide an independent or unbiased review of the recorded conversations.

I respectfully request that the Agency request access to these and other materials to continue its investigation. If the agency's investigation is complete, I respectfully request a "Right to Sue" letter so that I may compel their disclosure in court.

Specifically, I respectfully request that the EEOC conduct an independent review of the recordings from my one-on-one meetings with Malaika, as well as the sessions involving Ziquora Banks. Additionally, I believe that if the EEOC requests and reviews all communications between Malaika Aaron-Bishop, the coaching agency (CCI), Ziquora Banks, and Verity regarding my situation of ongoing harassment and discrimination, it will reveal further evidence of the discriminatory practices Verity's leadership has institutionalized for individuals who do not fit their mold of "diversity."

**Hostile Work Environment and Resignation Letter**

The resignation letter from a previous marketing manager corroborates my claims of an extensive hostile and discriminatory work environment **before I joined the company**. The letter explicitly mentions a longstanding toxic and hostile work environment that predates my employment. This reinforces the notion that the marketing department faced systemic issues, which Verity's leadership failed to address.

I'm including the Glassdoor reviews as exhibits to support the claim that Verity has a documented history of creating a discriminatory and toxic work environment, as described by other current and former employees. These reviews highlight consistent patterns of discrimination, poor communication, a decline in company culture, favoritism, and a lack of accountability from senior leadership. These sentiments align with the hostile and discriminatory experiences I have shared in my complaint. (Exhibit E)

**Verity claims I never raise allegations about Ziquora Banks, which is patently false.**

Initially, it was my belief that addressing the comments and actions of Ziquora Banks with our shared coach, Malaika Aaron-Bishop, would help. Not only did I consistently raise them to Ms.

Aaron-Bishop during our recorded sessions, but I even mentioned that the situation with Ziquora Banks made it very difficult for me to recruit since I did not feel comfortable bringing someone into this toxic environment. As I mentioned in the original complaint which Verity failed to respond to, while reviewing the qualifications and outcomes of Derek, a Caucasian candidate, Ziquora Banks stated that she could not abstain from her own bias against white males in front of everyone in the panel which included another member of the marketing team, Raquel Lopez, and I. Despite the candidate's qualifications—including his fluency in Spanish and extensive experience immersed in diverse cultures—Ziquora Banks pushed for him to be disqualified solely based on his race and gender.

The tipping point was when during a meeting Ziquora Banks called me a "white supremacist" for "moving too fast", a fact that again is never addressed Verity's response. After this incident and having previously raised several issues to our mutual coach Ms. Aaron-Bishop with no results, I initially scheduled a meeting with Marisa from HR to address my concerns. At that time Verity's leadership had started mounting an aggressive retaliatory campaign against an employee that surface discriminatory and preferential treatment from Leadership with the goal of firing him. The person, along other impacted employees, wanted to form a Labor Union to protect workers against retaliation and favoritism; to prevent this, Verity made managers hold chats with outside law firms to get them to block any sort of unionization effort and actively started finding ways to get that person fired, which they seemed to be able to do. I was even approached by an attorney hired by Verity, asking if I had any information about that individual or had ever seen him act aggressively.

After seeing first-hand the extent to which Verity would go to retaliate against complaints or concerns about discrimination or favoritism against their Leadership team, of which Ziquora Banks is a part of, I decided to cancel the HR meeting and instead keep raising my complaint to my coach, Malaika Aaron Bishop. That conversation **was recorded**, and during the call, I clearly stated, "Turn your camera on, because I want to see your face when I tell you this," before sharing that Ziquora had called me a white supremacist.

**Verity makes claims about data and information, but never provides it or cherry picks what to share to distort and mislead.**

Verity makes numerous claims about data, information, investigations, recordings, and policies yet consistently fails to provide any concrete evidence, selectively sharing details to distort the truth and mislead. In Verity's reply they state that there is data about badge access in page 3, a quick investigation into the matter and recordings between Malaika Aaron-Bishop and me as well as with Ziquora Banks but never disclose or present them. Instead, Verity aims to be judge, jury and executioner by stating that these materials have been reviewed by them, and surprisingly found nothing wrong with their own actions or those they are trying to protect.

In the few cases where they disclose information, they share cherry pick it to try to mislead and paint a bias view; specifically in the email response that I received where they conveniently leave out the initial part of the email (my exhibit C, where I ask for policy and process information, as well as their selective excerpt from the handbook )which literally stops at how they manage any policy violations.

If Verity is truly confident in the validity of its claims, it should have no hesitation in providing the following information for the EEOC to review:

- Any related data, including badge access.
- The investigation they carried out, it's results, as well as how it was managed and by whom.
- All transcripts and recordings of conversations between Ms. Aaron-Bishop and myself, as well as all pertaining communication between Ms. Aaron-Bishop or CCI and Ziquora Banks or Verity where I'm brought up.
- The full Employee Handbook that was authorized and in effect while I was employed at Verity, as well as any updates made and how they were communicated to employees.

Their refusal to do so would raise significant doubts about the legitimacy of their accusations and further prove that my termination was due to racial discrimination. Until Verity allows for such impartial scrutiny, their assertions lack credibility and seem like an effort to justify wrongful actions. A comprehensive review of the recordings would reveal that I raised multiple complaints about Ziquora Banks, which were conveniently ignored.

**Termination Process and Lack of Transparency**

The circumstances surrounding my termination were highly irregular and raise serious concerns. On the day I was terminated, a meeting was scheduled after hours with no agenda, simply titled "touch-base." Due to a prior commitment, I was unable to attend. Shortly thereafter, one of my direct reports reached out to me, expressing concern about receiving a similar "touch-base" meeting invite for the next morning—except my entire team was included except myself. This prompted suspicion that the initial phone call wasn't intended to provide me with a warning but was part of a coordinated effort to terminate me at the same time as the Associate Board Member.

What makes this situation even more troubling is the timing. Both calls—mine and the Associate Board Member's—occurred simultaneously. While the Board Associate officially stepped down at 5:04 PM, I was still terminated at 5:38 PM for allegedly breaking a policy I was not aware of. Given that the conflict of interest ceased to exist the moment the Board Associate resigned, there was no reason for my termination under the guise of policy violation. The lack of transparency, the timing of the events, and the coordinated nature of the terminations all strongly suggest this was retaliation for the concerns I had raised, rather than a legitimate policy breach. (EXHIBIT F, FERNANDO'S EMAIL WITH THE TIME AND MY EMAIL FROM HR LETTTING ME GO)

## IV. CONCLUSION

Verity's statement not only failed to address the main issues in the original complaint, but introduce contradictions, misleading statements, and dishonest information into the process, which undermine their credibility and strengthen my the case for finding I was the subject of persistent discrimination and harassment by Ziquora Banks due to my race and nationality, and also that Verity has a toxic environment where covering up discrimination and retaliation are

the norm.

Again, Verity failed to address two key points in the original complaint:
- Ziquora Banks called me a white supremacist during a meeting, which was brought up to Ms. Malaika Aaron-Bishop in a **recorded session.**
- Ziquora Banks made it a habit to discriminate people based on their gender, sex, and nationality if they did not meet her definition of diversity. The clear example is where she dismissed a candidate that met all the qualifications due to him being a Caucasian male.

Instead, Verity responded with of contradictions as well as misleading and false statements such as:

I'm filling "false" claims to get back with the company. This has clearly been proven FALSE.

My termination was due to a policy violation, which was deemed to be misconduct. If they truly had terminated me due to a policy violation, with proof of the misconduct, why didn't they not present it to the Employment Security Department of the State of Washington?

Holding out that I received an employee handbook or had access to it is also FALSE. As I shared on the attached email in Exhibit C, I asked for all relevant policies, including the employee handbook, since I never received it. To this date, I've only seen the small excerpts presented in their statement which conveniently do not include the policy to resolve any issues.

Statement that a co-worker left the team because of me is MISLEADING. The resignation letter presented by Verity is 3 pages long and addresses the toxic environment and discrimination that happened at Verity *before I joined.* This culture of favoritism, discrimination, and harassment which I directly experience by Ziquora Banks

Verity's failure to provide key evidence, including video-recorded comments by Ms. Banks and other documentation related to my termination, further underscores my belief that I was retaliated against for raising concerns about discrimination. Their refusal to share this information transparently suggest my termination was, indeed, based not on any policy violation but on their desire to silence someone who challenged their practices. This is evident in the coordinated nature of the meeting set at the same time as the Board Associate's resignation and the fabricated claims of misconduct to justify my dismissal.

Verity has consistently attempted to distort the facts to cover up discriminatory practices, particularly under the leadership of Ziquora Banks.

From the documented hostility in the resignation letter of another employee to my own experiences of being targeted for being a "white-passing" Mexican, the toxic environment at Verity is evident. The company publicly claims a commitment to diversity and inclusion, yet my experience reveals a stark contrast—leadership actively retaliates against those who don't fit their narrow version of "diversity" and those who dare to voice concerns about discriminatory behavior.

The fact that Verity has withheld key evidence, such as surveillance footage, recorded conversations, and other relevant materials, casts further doubt on their narrative. If they truly believed my termination was justified, they would have no issue providing these materials for independent review. Instead, their reluctance highlights a clear attempt to avoid accountability for wrongful actions.

I am standing up for my legal rights, and I will not allow Verity to continue manipulating the truth to justify their actions. I respectfully request that this complaint be thoroughly investigated, with an independent review of all relevant evidence, including video recordings, communications, and documents. This will ensure that the truth is brought to light and justice is served, exposing the retaliatory and discriminatory practices Verity has tried to conceal.

Please feel free to contact me if you have any additional questions or if there are other issues that arise which I did not have the opportunity to address in this document.

Best Regards,

Maria Alonso

Exhibit A



**Employment Security Department**
WASHINGTON STATE
P.O. Box 9046, Olympia, WA 98507

Date: Mar 23 2024
**Letter ID: L0054969609**
Claimant ID: R579XT

MARIA F. ALONSO
2201 SW GENESEE ST MARIA ALONSO # 2201
SEATTLE WA  98106-1256

Dear MARIA ALONSO:                                    Separation from a job-74639426

**We made a decision about your claim for unemployment benefits.** This decision applies to your UI claim, Claim ID R579XT-003.

## Our decision

**We approved your unemployment benefits starting Feb 4 2024.** You might have other issues on your claim that prevent us from paying you. We send you separate letters about each issue affecting your claim.

You or your employer, VERITY CREDIT UNION, said you were fired.

We looked at the information and found your actions were not misconduct. When we find no misconduct, you are eligible for benefits.

We decided your actions were not misconduct because:
*   We do not know why your employer decided to fire you. We did not get enough information about the reason.
The laws that apply are RCW 50.20.066, RCW 50.04.294, WAC 192-150-200 and WAC 192-150-205.

## Next steps

**Keep filing your weekly claims for the weeks you want to get benefits,** even if we denied you. If your situation changes, we may pay you benefits for the weeks you filed.

**Know your rights.** Read the next section on appeal information if you disagree with our decision.

## Appeal information

Search more than 60,000 Washington jobs on WorkSourceWA.com. Visit WorkSource for free employment workshops and expert job-hunting advice.
Read the Handbook for Unemployed Workers at esd.wa.gov to find everything you need to know about benefits, including training for a new career.



L0054969609
DETERMINATION LETTER

Page:  1   of   3

Exhibit B

**De:** Jenny Mosher Jennifer.Mosher@KornFerry.com
**Asunto:** Verity - Vice President of Marketing offer details
**Fecha:** February 22, 2023 at 7:12PM
**Para:** Maria A Henaine henaine.maria@gmail.com



Hi Maria,
Congratulations on the offer from Verity! I am truly excited for you as I believe it is an organization that is truly walking the walk.
Below is the note from Pier'jea:

Maria Alonso-Henaine,

It is with great pleasure that Verity Credit Union conditionally offers you our Vice President of Marketing position. Congratulations! Please regard the following details:

- We would like to offer you a starting base salary of $162,000.00 over the course of a year.
    - You are also being offered a five(5) days of PTO (paid time off) added onto your initial paycheck.
- As part of the leadership team at Verity, you will also be eligible for organizational bonuses up to 15% of your annual base salary.
- You will be eligible for premium benefits including: medical, dental, and vision insurance, along with the ability to accrue 20 days of paid time off each year, in addition to 11 paid federal holidays. Your PTO accrual rate will then increase with your tenure.
- You will be eligible for participation in our 401(k) program. Verity matches contributions up to 6% and this match is vested 100% immediately.
- You will also be eligible for other Verity employee perks during your first year including: a green transit subsidy, education subsidy, mortgage discount, paid parental leave, a wellness subsidy, our 0% employee loan, and more.
- You will be eligible for annual performance reviews which may lead to increases in your base pay.

Because a job offer is much more than just base pay, I have included a copy of our Total Compensation package. Please note that this offer is contingent upon the satisfactory completion of your reference checks and verification of employment (instructions attached). We will work with you to identify a start date and training schedule at that point as well. In the meantime, please review the details of this offer and contact me with any questions you may have.

Please note: We greatly look forward to having you join our company and become a member of our team. However, we recognize that you retain the option, as does Verity Credit Union, of ending your employment with us at any time, with or without notice and with or without cause. As such, your employment with Verity is at-will and neither this letter nor any other oral or written representations may be considered a contract for any specific period of time.

Sincerely,


*Best regards,*

*Pier'jea Lyon, MS*
*Pronouns: she/her/hers/ella (what is this?)*
Human Resources Manager

Exhibit C

 Gmail        Maria Henaine <henaine.maria@gmail.com>

---

## Termination Effective Today, 2/8/2024

---

**Maria A Henaine** <henaine.maria@gmail.com>        Fri, Feb 9, 2024 at 10:33 AM
To: Pier'jea Lyon <Pier'jea.Lyon@veritycu.com>

Good morning Pier'ja,

Thank you for the information, please provide the following items as well as the specific place/verse where this policy is allegedly violated.

1. List of training of intimate relationships in the workplace, as well as date and time these have been offered.
2. Policy related to hostile work environments
3. The specific policy I allegedly violated (place, verse and line )
4. Policy information on how conflict of interest is managed in the workplace

Looking forward to receiving these.

Best Regards,
Maria-

Exhibit D

 Gmail                              Maria Fernanda A Henaine <alonso.mafer@gmail.com>

---

## 401k plan
2 messages

---

**Maria Fernanda A Henaine** <alonso.mafer@gmail.com>                    Fri, Mar 8, 2024 at 4:40 PM
To: Holly Wu <holly.wu@veritycu.com>

Holly,

I need the summary plan description and plan document for the 401k plan. I will need previous and current ( so two plans are needed)

Thank you,

Maria
Sent from my iPhone

Exhibit E

1.0 ★     ∨                                                                                    Jun 14, 2023  •••

### Dramatic, Toxic Shift

   Anonymous employee
     Former employee

✗ Recommend    ✗ CEO approval    — Business outlook

Pros

Had I written this review any time prior to the arrival of the current CEO, I would have spoken about the overall supportive culture and incredible people, the genuine attempts to adhere to the idealism of mission and values, the opportunities for advancement and exploration of new career paths through internal hiring, scholarships, and so much more. Now, I have nothing more to say than "you'll get a paycheck and some benefits... but not nearly as much as you could elsewhere, and not nearly as much as the inexplicably growing executive team, which enjoys 6 figure salaries, unlimited vacation, and continues to promote and support a fearmongering, toxic culture under the guise of systemic change"

Cons

The biggest detriment to Verity over the past few years has been the arrival of the new CEO. The announcement of Tonita Webb's impending arrival was met with a lot of concern and heartbreak, but staff were told to give her a chance, which they largely did for the first year. Here are some highlights since then: - Rampant turnover. In addition to the loss of a vast majority of the most tenured staff/leaders, entire departments have either turned over entirely or been removed from the organization. Insinuations have been made that these were due to burnout or because they were "contributing to the pre-existing toxic culture of Verity." Nothing could be less true (as evident by all of the previous years survey results, awards, etc.) - apart from, perhaps, the burnout from dealing with the new culture created by the CEO. - Breakdown in communication. Despite the CEO claiming to have an open door policy, not only are questions no longer being answered by the executive team, but if questions ARE asked directly, people can expect a backlash. - Top heavy. Despite so much turnover, the organization continues to add more and more senior and executive leadership, but members, middle management, and front line staff have yet to see much if any payoffs from having all this additional "expertise." No improvements, no additional tools/products, resources or anything to justify the investment of so much of the members' resources. - Incompetence/Long Term Damage veiled as good DEI work. Like so many organizations, Verity has been attempting to improve their DEI efforts. This was necessary and a good thing for them to do - particularly as a financial institute! Unfortunately, the approach that the CEO has spearheaded can be summed up as the language police, obvious favoritism, and a culture that promotes retaliation, shame, manipulation, and the rejection of allies. Think peak McCarthyism. When the approach has been challenged, the CEO says that they are speaking for all of the historically silenced and under represented people. Many of those under represented people (members of the LGBTQIA+, Latin, Asian, Muslim, Jewish, Black, bi-racial, Neurodivergent, disabled, etc. - including myself - would disagree and ask you - again! - not to speak for us!



2.0 ★★   ∨                                                      Feb 9, 2022  •••

**Look elsewhere**

🧑 Anonymous employee
   Current employee, more than 1 year

✗ Recommend   ✗ CEO approval   — Business outlook

Pros
Chances to get experience in different areas or banking and finance

Cons
Everything else, low pay, you work multiple positions but get paid for one. Management made racist remarks about the new CEO who is an African American Woman, and push progressive values but aren't progressive at all, DEI training is just for looks. Company asked us to do a focus group about Diversity and Inclusion and basically put all those who were African American in one group and everyone else in another group. Highly discriminatory environment against BIPOC and those with mental health situations. I was turned down for a position because the manager didnt know if she could "trust" me, even though I was more than qualified.

Advice to Management
Either practice what you preach or stop preaching. Be honest with employees instead of lying. Start hiring African Americans and other people of color into management position and instead of taking an academic approach to diversity and inclusion.

🌐 8

🙂 Helpful     ↪ Share

---

1.0 ★          ∨                                                  Aug 3, 2023  •••

# Toxic

🧑 Anonymous employee
   Current employee

✗ Recommend    ✗ CEO approval    ✗ Business outlook

Pros
Most members are wonderful Most of the employees are, at heart, nice people. The core values of the institution are sound

Cons
Not following the core values of the institution, which is extremely troubling. Toxic. Hostile work environment. One of the most toxic experiences of my life. Verbal abuse, exclusionary practices, bullying. When complaints are raised there are months of inaction, no discussion on how to address the toxic environment, and the bullying continues. Perpetual understaffing from turnover, primarily due to severe underpayment relative to the market, bullying psychologically unsafe environments, and a lack of opportunities for advancement, development or exploration for many employees. Rampant bullying, gaslighting, favoritism, manipulation, and discrimination. Ask a question and get a hostile non-response. Provide a suggestion and be criticized for having the gall to think you might be able to contribute. Extraordinary pay discrepancies and disparities. Many employees are not being given the opportunities to advance their careers, and when asked why they can't get promotions, the answer are non-answers, deflections and abuse.

Exhibit F

Nancy,

After reviewing the bylaws, I can confirm what you correctly pointed out during Thursdays meeting; I was unaware that there is a stringent policy regarding spouses at Verity, even for Associate members with no voting rights or decision power. Therefore, even though I never sat in any committee where marketing was addressed or had any sort of influence on topics like hiring, promotions or compensation, in an abundance of caution I respectfully accept your decision to recuse me from the Associate Program communicated to me during our Thursday Feb 8th meeting at 5:04 PM PST.

I would be remiss if I did not point out that this unfortunate situation has come as news to me. Regrettably, I was never asked if I had any relation with someone at Verity during the application and recruitment process or in my tenure in the Associate Program. Additionally, even though I requested to get the bylaws from several Board Directors as well as Heidi Hubert, I was finally able to review them when you requested them last Thursday Feb 8 evening. Finally, as you mentioned during our last Board meeting in December, the Board never provided any training or conversation with Associate members regarding bylaws, regulations, expectations or general roles and responsibilities. This has led to this set of circumstances where I cannot stress enough that, if this matter had been brought to my attention at any stage, including our interview or onboarding, I would have immediately recused my application or stepped down.

With regards

Fernando Turrent

**Pier'jea Lyon** <Pier'jea.Lyon@veritycu.com>

to me, Ziquora, Tonita ▼

Thu, Feb 8, 5:32PM   ☆   ☺   ↩

Good evening Maria,

Ziquora sent a meeting invite to you this morning at or around 8 am to which you declined at 5:01pm, which was after the meeting had begun. Ziquora then tried to reach out t you via text message and telephone and has not heard back from you.

It has come to my attention that you have violated Verity's Ethics Policy and Personal Relationship Policy by failing to disclose your marriage to Verity's Associate Board mem Mr. Turrent. Given that Verity's Board is a governing body with a unique responsibility to oversee and manage Verity's operations, employees are expected to abide by Verity's policies to ensure that there is no real or imagined appearance of conflict of interest. Your failure to disclose your marriage to an Associate Board member violates Verity's Personal Relationship Policy. As a result, Verity is terminating your term as Vice President of Marketing immediately.

I recognize this is a difficult situation to navigate and my goal is that of a positive and productive transition. Today will be your last day in the office and as an employee on pa. You are expected to return any office assets/equipment. Jason will coordinate your equipment pick up with a carrier service.

Holly will send over the documents pertaining to your separation to your personal email. Your final check will placed in your account on file on February 14th, 2024.

Thank you for your contributions to Verity Credit Union. Please do not hesitate to reach out to me with any questions.


Best regards,

Pier'jea Lyon, MS
Pronouns: she/her/hers/ella (what is this?)
Director of HR & Training
T (206) 641-2840
F (206) 641-2840



ORIGIN ID:AIYA  (201) 332-8828
MARIA ALONSO
C/O POSTNET NJ122
344 GROVE ST

JERSEY CITY, NJ 07302
UNITED STATES US

SHIP DATE: 06MAR26
ACTWGT: 0.50 LB
CAD: 261313364/WSXI3700
DIMS: 9x12x1 IN

BILL SENDER

TO US DISTRICT COURT/ CLERKS OFFICE
WESTERN DISTRICT OF WASHINGTON
700 STEWART ST
SUITE 2310
SEATTLE WA 98101
(205) 370-9400        REF:
INV:
PO:                   DEPT:



FedEx
Express

E

TRKH
0201  3993 8723 9260

MON - 09 MAR 10:30A
PRIORITY OVERNIGHT

XA BFIA

98101
WA-US SEA

Envelope